UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS KYLE, | ) |
| Movant, | ) |
| v. | ) Case No. 4:07CV1521RWS |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

Thomas Kyle moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Kyle claims he received ineffective assistance of counsel when his counsel failed to produce and introduce expert testimony regarding Kyle's familial situation which would have resulted in a downward departure and/or a below-guidelines sentence under 18 U.S.C. § 3553(a). Kyle also claims his counsel was ineffective for failing to advise him against sending correspondence to the Court which jeopardized Kyle's ability to obtain a two-level reduction for acceptance of responsibility. Kyle claims that, but for his counsel's substandard performance, he would have received a lower sentence. For the reasons set forth below, I will deny Kyle's motion.

*Background*

In 2005, Thomas Kyle was indicted on three counts of Mail Fraud and five counts of Money Laundering. In March 2006, a grand jury returned a superseding indictment on the Money Laundering counts. The Mail Fraud counts remained unchanged. The matter was set for a jury trial on Monday, May 15, 2006. Three days before trial, on May 12, 2006, Kyle decided to

plead guilty to three counts of Mail Fraud and five counts of Money Laundering. James Martin represented Kyle throughout the proceedings.

Facts in Plea Agreement

In Kyle's plea agreement, Kyle and the United States Attorney's office stipulated that the State of Missouri operated the Rebuilding Communities Tax Credit Program through the Missouri Department of Economic Development ("DED") from 2000 to 2004. The purpose of the Tax Credit Program was to stimulate business activity in Missouri's "distressed communities" by providing tax credits to eligible businesses that locate, relocate or expand within a distressed community. The program provided a Missouri state tax credit based on 40% of the amount of funds spent by eligible businesses for computer equipment, medical laboratories and equipment, research laboratory equipment, manufacturing equipment, fiber optic equipment, and high speed telecommunications ("Specialized Equipment"). The program required that the Specialized Equipment be purchased before the tax credit could be issued. To obtain a Specialized Equipment tax credit, eligible businesses were required to send the DED proof of payment, including invoices and checks, for the Specialized Equipment. The program permitted the sale of tax credits to other taxpayers with Missouri State income tax liability.

Kyle was the owner of several companies: e6, Definiti Group, 1st Avenue Motion Media, and Secure ID. James Jones was the owner of Electronics and More, a company that purportedly supplied computer equipment. Between 2000 and 2004, James Jones assisted Kyle in submitting false applications for the Specialized Equipment tax credits to the State of Missouri. These applications included the submission of false invoices that showed that Electronics and More or

Echo Valley Recycling had supplied computer equipment to companies owned by Thomas Kyle, when in fact, all of said equipment had *not* been supplied or purchased.

Kyle used the U.S. Postal Service to submit false applications and invoices to DED to obtain tax credits. Kyle submitted copies of checks purportedly drawn on his accounts as evidence that he had purchased Specialized Equipment when he knew that the checks had not been cashed or deposited and in fact would not be cashed or deposited. In reliance on Kyle's false representations, DED issued tax credits of approximately $675,000 to Kyle's businesses. In turn, Kyle sold these tax credits to other Missouri taxpayers. Kyle then wire transferred the proceeds from the sale of the tax credits to various bank accounts.

In June 2003, DED asked Kyle to send the reverse side or backs of the checks Kyle had previously submitted as proof of payment for the Specialized Equipment as part of an audit. In response, Kyle sent copies of invoices and credit memos that purported to show that he had performed more than $2 million in television production work for Jones in exchange for the purchase of the Specialized Equipment. Kyle created these invoices and memos for the purpose of preventing further investigation by authorities.

<u>Letter to Court on Behalf of Jason Kyle</u>

Kyle's son, Jason, was also indicted for participation in the same scheme. Jason pled guilty on May 4, 2006. On July 14, 2006, before Jason's sentencing, Kyle sent me a letter asking for leniency in his son's sentencing. In the letter, Kyle appeared to reject responsibility for his own role in the scheme. He stated that at the time Jason became involved in the scheme,

> *I was totally under the impression that everything we were doing was totally legal.* It wasn't until years later that I even suspected that Jim Jones was not actually doing what he said he was doing and that there

> was something amiss. I will admit that by that point I really wasn't
> sure what to do. I now know that I should have checked things out
> more thoroughly, but I was still justifying everything based on what
> I was being told my Jones; that everything we were doing was legal.
> Although I reasoned that what I was doing was still proper, I should
> have worked harder to determine exactly what was going on instead
> of ignoring the signs and getting deeper involved with Jones.
>
> * * *
>
> It wasn't until much later that I began to suspect that something was
> wrong, and by that time I wasn't really sure what to do about it. I
> made several attempts to get information from Jones without success.
> My suspicions were confirmed too late when I confronted Jones after
> the first newspaper article and he first told me that the equipment he
> had led me to believe he had sold to me and was storing for me was
> nowhere to be found. (Emphasis added)

Pre-Sentence Report

On August 31, 2006, Thomas Kyle's sentencing hearing was held. Before the sentencing hearing, the United States Office of Probation and Parole provided me with a presentence investigation report. The presentence investigation report recommended a two-level enhancement to Kyle's sentencing offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The presentence investigation report also initially recommended a two-level reduction for acceptance of responsibility. The initial presentence investigation report calculated Kyle's offense level at 22, which resulted in a guideline range of 41 to 51 months.

The probation office withdrew the acceptance of responsibility recommendation when Martin filed objections to the presentence investigation report that, in the opinion of the probation office, demonstrated that Kyle denied responsibility for the relevant conduct that comprised the offenses for which Kyle had pled guilty. Following the probation office's withdrawal of the acceptance of responsibility recommendation, the final presentence

investigation report calculated Kyle's offense as 24, which resulted in a guideline range of 51 to 63 months.

Objections to Pre-Sentence Report

Kyle objected to the presentence investigation report on three bases. He argued that the report incorrectly calculated the loss. Kyle also argued that adding a two-level enhancement for obstruction of justice was improper and that he was entitled to a two-level reduction for acceptance of responsibility.

The Government contended that Kyle was ineligible for a two-level reduction under § 3E1.1(a). Specifically, the Government contended that Kyle obstructed justice by sending false paperwork to the DED in his unsuccessful effort to redirect or mislead the DED's audit. If a defendant receives an enhancement pursuant to 3C1.1 for obstruction of justice, then the guidelines require "extraordinary acceptance" before a defendant may receive a reduction in his offense level for acceptance of responsibility under 3E1.1. The Government argued that Kyle did not present an "extraordinary" case that would allow simultaneous adjustments for obstruction of justice and acceptance of responsibility.

Martin submitted a sentencing memorandum setting forth factors he believed I should consider when fashioning a sentence sufficient but no greater than necessary to comply with 18 U.S.C. § 3553(a). In Kyle's sentencing memorandum, Martin contended that 2 levels should be deducted from Kyle's offense level pursuant to § 3E1.1(a) because he accepted responsibility before trial. Kyle denied that his decision to clarify his involvement in the scheme was a rejection of his guilty plea or acceptance of responsibility. He again argued that a two-level enhancement for obstruction of justice was improper because, at the time Kyle submitted the

memos, there was no criminal investigation pending. Instead, there was only a state audit. Additionally, Kyle claimed the memos were not intended to show work already performed, but instead showed work he would perform for Jones. Kyle also urged the Court to consider his son Timothy's serious medical conditions and his son Matthew's disability and need for counseling. Kyle suggested an offense level of 20, which carried a guideline range of 33 to 41 months.

At the sentencing hearing, Kyle's attorney disputed some of the conduct contained in Kyle's plea agreement. After I questioned Martin whether Kyle wished to withdraw his plea, he responded that he did not intend to do so. I then adopted the factual findings contained in the presentence report because they mirrored those Kyle admitted in his plea agreement and under oath at the time he entered his plea of guilty.

The sentencing hearing also included a discussion about the withdrawal of the § 3E1.1 two-level reduction for acceptance of responsibility and the § 3C1.1 two-level enhancement for obstruction of justice. I concluded that a State of Missouri Department of Economic Development audit should be treated as an investigation for purposes of the two-level enhancement under 3C1.1. Because I found that Kyle had obstructed justice in the government audit, Kyle could receive a reduction for acceptance of responsibility only if he could show extraordinary acceptance as that term is used in the Sentencing Guidelines.

At sentencing, I explained,

> But, candidly, Mr. Kyle, under a normal circumstance I think this would be a difficult call, because I did receive your letter before Jason was sentenced. You discussed at length about how you believed you were using the program for the purpose that it was intended and, you know, Mr. Jones seemed to be the one responsible for all the problems and certainly, least of all, Jason was only doing what you asked him to do.

> There's no acceptance in that letter that you knew when you represented to the Department of Economic Development that $2 million of equipment had been purchased, "had been," in the past tense, not "would be," not "would be paid for," not "would be found," not "would be put to use," but "had been."
>
> But you knew that wasn't true. That's what you told us at the time of your plea. But you haven't – you haven't – the nature of your objections today, the nature of the letter that you personally wrote to me – and I don't have any reason to believe that it's not a letter from you – certainly would make the decision about whether or not you've accepted responsibility under ordinary circumstances difficult.
>
> What tips it, of course, here is that having been found the enhancement under 3C1.1 for falsifying those documents to send to the Department of Economic Development to push the audit back, means that your acceptance of responsibility I would have to find is extraordinary. There is no record before me that your acceptance of responsibility is extraordinary. It's borderline ordinary. It's clearly not extraordinary.

Sent. Hr'g Tr. 47:4–48:8, Aug. 31, 2006. Based on the application of the Sentencing Guidelines to the facts of Kyle's case, Kyle had a criminal history category of I and a total offense level of 24 resulting in an advisory guideline range of 51 to 63 months.

Kyle moved for a traditional departure due to Kyle's family situation, including the serious medical conditions of family members. Kyle's attorney provided medical and school records of Kyle's son Matthew. He also provided me with a description of the disabilities of another son, Timothy. The Government contended that the facts of Kyle's case did not rise to the level of a traditional departure. I denied Kyle's departure motion because his circumstances did not present facts that warranted a traditional departure. I explained,

> 5 H1.6. In sentencing a defendant convicted of an offense other than an offense described in the following paragraph, family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted.

> Probably the greatest tragedy and the biggest – undoubtedly the biggest heartache of anyone who works in this building is that everyone who faces a potential sentence has family members who depended on them. Often that's the reason they engaged in the conduct, is because it was a misguided sense of taking care of those family members. And some to varying degrees, but unfortunately, Mr. Kyle does not present in this set of facts any circumstances that's so extraordinary that the sentencing commission didn't contemplate it.
>
> So I'm not going to impose or grant a traditional departure under the guidelines under 5K2.0 which the argument would have to have been that I could depart if the circumstances were of a kind or to a degree not adequately taken into consideration by the sentencing commission in formulating the guidelines. In fact, they contemplated such circumstances and instructed me not to typically consider those circumstances in fashioning a sentence.

Sent. Hr'g Tr. 51:16–52:12.

After considering the factors in 18 U.S.C. § 3553(a), I sentenced Kyle to imprisonment for a term of fifty-one (51) months to run concurrently on each of the counts. I also sentenced Kyle to a three-year term of supervised release to begin upon his release from custody.

Kyle appealed his sentencing on September 11, 2006. On January 17, 2007, the Eighth Circuit dismissed his appeal for failure to prosecute. On August 28, 2007, Kyle filed this motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.

*Legal Standard*

The Sixth Amendment establishes the right of the criminally accused to have the assistance of counsel in his defense. The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims under 28 U.S.C. § 2255. See Caban v. United States, 281 F.3d 778, 781 (8th Cir. 2002). In order for a convicted defendant to prove that his counsel was ineffective, the defendant must first show that counsel's

performance was deficient. Strickland, 466 U.S. at 687. To do so, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Id. at 687–88. Judicial scrutiny of an attorney's performance must be highly deferential, and thus, the courts should employ a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 689. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. at 687. A defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. However mechanical these tests may seem, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

*Discussion*

Kyle claims he received ineffective assistance of counsel because Martin failed to produce and introduce expert testimony regarding Kyle's familial situation which would have resulted in a downward departure and/or a below-guidelines sentence under 18 U.S.C. § 3553(a). Kyle also claims Martin was ineffective for failing to advise him against sending correspondence to the Court which jeopardized Kyle's ability to obtain a two-level reduction for acceptance of responsibility. Kyle claims that, but for Martin's substandard performance, Kyle would have received a lower sentence.

*Expert Testimony*

Kyle argues that Martin's representation at sentencing fell below an objective standard of reasonableness for failing to produce expert testimony that would support a downward departure

based on Kyle's familial situation. Kyle claims that because he has two special needs children, one with a severe case of adolescent idiopathic scoliosis and one with a category II learning disability, both of whom receive social security disability benefits, that his case falls outside of the heartland, thereby entitling him to a traditional departure.

Kyle's attorney submitted a sentencing memorandum describing Kyle's sons' disabilities. He also provided me with a detailed statement, medical, school and other records of Kyle's sons along with a photograph. Kyle acknowledged on the record that Martin provided information about his familial situation. He stated,

> I would ask that you take into consideration as much as you possibly can anything that would help me in my pursuit of taking care of my family. **I do have a son with special needs as you are very much aware from the information that has been provided to you.** And my wife is—it's difficult for her to work full time in order to take care of him.

Sent. Hr'g Tr. 55:12–17. I was fully aware of the gravity of the situation facing Kyle's family. In fact, immediately before imposing sentence, I acknowledged the family's need to care for their special needs child. Sent. Hr'g Tr. 58:18–21.

To prevail on his ineffective assistance of counsel claim, Kyle must show that Martin's alleged deficient performance prejudiced him, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 486 U.S. at 687, 694. In this case, had Martin provided expert testimony regarding his familial situation and special needs children, I would have denied Martin's motion for a traditional downward departure and his request for a below-guidelines sentence. I considered these factors and concluded that Kyle was not entitled to a downward departure. I also took

-10-

these factors into consideration when I sentenced Kyle to the bottom of the guideline range. There is nothing in Kyle's § 2255 motion that would have affected my sentencing decision. Kyle has not shown a reasonable probability that had Martin offered expert testimony that the result of the proceeding would have been different. As a result, Kyle cannot show that Martin's alleged deficient performance prejudiced him in any way.

*Correspondence to the Court*

Kyle also alleges that Martin's representation fell below an objective standard of reasonableness when he failed to counsel or instruct Kyle against sending me the July 14, 2006 letter. Kyle argues that Martin should have known that the letter jeopardized Kyle's chance of obtaining a two-level reduction for acceptance of responsibility. Kyle maintains that had Martin counseled him or instructed him against sending the letter, he would have received a two-level departure for acceptance of responsibility.

Although Kyle's letter contributed to my finding that he had not accepted responsibility for his actions, it was not the only factor. At the sentencing hearing, Kyle objected to statements in the presentence investigation report that mirrored those in his plea agreement. More important was the fact that Kyle received a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 for producing false documents in response to an official investigation and audit by the State of Missouri Department of Economic Development.

Application note 4 of § 3E1.1 states, "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply." At

sentencing, I explained, "[w]hat tips it, of course, here is that having been found the enhancement under 3C1.1 for falsifying those documents to send to the Department of Economic Development to push the audit back, means that your acceptance of responsibility I would have to find is extraordinary. Its borderline ordinary. It's clearly not extraordinary." Sent. Hr'g Tr. 48:1–8.

Kyle did not plead guilty until three days before the trial. Even in the absence of Kyle's letter, I would not have concluded that Kyle exhibited extraordinary acceptance of responsibility. Kyle has not shown a reasonable probability that had Martin counseled against sending the July 14, 2006 letter that the result of the proceeding would have been different. As a result, Kyle cannot show that Martin's alleged deficient performance prejudiced him in any way.

*Request for an Evidentiary Hearing*

Generally, 28 U.S.C. § 2255 entitles movants to a hearing on the merits of their motion. However, there is a well-established exception to this rule when the record of the case conclusively establishes that the petitioner is entitled to no relief. Hodges v. United States, 368 U.S. 139, 140 (1961); Cheek v. United States, 858 F.2d 1330, 1333 (8th Cir. 1988); United States v. Gann, 807 F.3d 134, 135 (8th Cir. 1986). Because the record is absolutely clear that Kyle is entitled to no relief, I will not grant his request for an evidentiary hearing on the merits of this motion.

I have also considered whether to issue a certificate of appealability. To grant a certificate of appealability, a court must find a substantial showing of the denial of a federal constitutional right. *See* Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). A substantial

showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994).

I believe that Kyle has not made such a showing on the grounds raised in his motion. Therefore, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Thomas Kyle's Motion to Vacate, Set Aside, or Correct his Sentence [#1] is **DENIED**.

Dated this 9th day of February, 2009.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE